SHEPARD'S McGRAW–HILL,
INC., Plaintiff,

v.

LEGALSOFT CORPORATION, a Colorado Corporation, Max Wharton, individually, Peter Westphal, individually, Software Technology, Inc., a Nebraska Corporation, United Systems, Inc., an Oklahoma Corporation, Lanier Worldwide, Inc., a Delaware Corporation, and Barrister Information Systems Corporation, a New York Corporation, Defendants.

No. 91–B–0063.

United States District Court,
D. Colorado.

July 9, 1991.

William W. Maywhort, Todd W. Miller, John J. Coates, Denver, Colo., for plaintiff.

Julie K. McCurdy, W. David Pantle, Sherman and Howard, Stephen N. Berkowitz, Lutz and Berkowitz, P.C., Denver, Colo., Marvin N. Benn, Dawn M. Cassie, Hamman & Benn, Chicago, Ill., Mark C. Donadio, Barrister Information Systems Corp., Buffalo, N.Y., Richard Kransler, Zuckerman & Kleinman, P.C., Denver, Colo., Alvin R. Leonard, Oklahoma City, Okl., for defendants.

## AMENDED MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

On June 21, 1991, hearing was held on three motions in this copyright infringement action: (1) motion to dismiss plaintiff Shepard's McGraw–Hill, Inc.'s (Shepard's) complaint for lack of personal jurisdiction and improper venue, filed by defendant United Systems, Inc. (United); (2) motion to stay or dismiss or for more definite statement, filed by defendant Software Technology, Inc. (STI); and (3) motion to dismiss, filed by defendants Legalsoft Corporation (Legalsoft), Max Wharton (Wharton) and Peter Westphal (Westphal) (collectively Legalsoft).

In its complaint, Shepard's alleges that it and Legalsoft entered into a contract (the Umbrella Agreement) whereby Legalsoft would write and Shepard's would publish computer software. The Umbrella Agreement has been recorded in the United States Copyright Office. Under the Umbrella Agreement, Legalsoft wrote and Shepard's published legal software called "CMS." Shepard's alleges that Legalsoft, through its agents Wharton and Westphal, wrote a program and related modules, called "LMS," which perform tasks substantially similar to the CMS software. Shepard's contends that it owns the copyright to CMS and that LMS infringes on its copyright. It further claims that defendants United and STI have infringed on its copyright to CMS by publishing and distributing LMS. Lanier and Barrister are also named in the complaint, but no motions from those defendants are before me.

## I. UNITED'S MOTION TO DISMISS

United, an Oklahoma corporation, contends that this court does not have personal jurisdiction over it. I agree.

### A. *Personal Jurisdiction*

To defeat the 12(b)(2) motion, Shepard's need only make a prima facie case of personal jurisdiction. *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir.1990).

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagen v. Amateur Basketball Ass'n.,* 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *see Leidy's, Inc. v. H[2]0 Eng'g, Inc.,* 811 P.2d 38 (Colo.1991).

Shepard's must satisfy a two-prong test to make its prima facie showing that I have personal jurisdiction over United. *See Schocket v. Classic Auto Sales, Inc.,* 817 P.2d 561 (Colo.App.1991) (LEXIS Colo library, Cases file). First, it must show that the Colorado long-arm statute, Colo. Rev.Stat. § 13–1–124, extends to reach United. This is true even in federal question actions where, as here, the underlying federal statute does not provide for nationwide service of process and process is served under the state long-arm statute. Fed.R.Civ.Proc. 4; *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104–05, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987); *Petroleum Helicopters, Inc. v.*

*Avco Corp.,* 804 F.2d 1367, 1371 (5th Cir. 1986); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 283 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Time, Inc. v. Manning,* 366 F.2d 690, 693 (5th Cir.1966) (copyright); *see Volk Corp. v. Art–Pak Clip Art Serv.,* 432 F.Supp. 1179, 1180–81 n. 2 (S.D.N.Y.1977).

The reach of Colorado's long-arm statute is a matter of Colorado state law. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). Should I conclude that Colorado state law requires dismissal for lack of personal jurisdiction, then I must dismiss, for I may not exercise personal jurisdiction where Colorado state courts would not.

Second, United must show that the requirements of the fifth amendment due process clause of the federal constitution are satisfied. *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 523 (Colo.1989); *see Taylor,* 912 F.2d at 431–32; *Leney v. Plum Grove Bank,* 670 F.2d 878, 879–80 (10th Cir.1982); *Pillar Corp. v. Enercon Indus.,* 1989–1 Trade Cas. (CCH) ¶ 68,597, 1989 WL 77667 (E.D.Wis. May 16, 1989).

There are two ways to establish personal jurisdiction.

Jurisdiction may be either general or specific. General jurisdiction arises from a defendant's continuous and systematic activity in the forum state. *See Rambo v. American So. Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988); [*Behagen,* 744 F.2d at 733]. Specific jurisdiction arises in the absence of such activity and is predicated on a defendant's minimum contacts with the forum which give rise to the cause of action.

*Kennedy,* 919 F.2d at 128 n. 2. *See Waterval v. District Court,* 620 P.2d 5, 9 (Colo. 1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). Shepard's admits that United did not and does not have an on-going and continuous business presence in Colorado. Rather, Shepard's relies on specific jurisdiction analysis.

### 1. Reach of the Colorado Long–Arm Statute

The first inquiry is whether the Colorado long-arm statute reaches United. Colorado Revised Statute section 13–1–124(1)(a) extends the jurisdiction of Colorado courts to any person who engages in "the transaction of any business within" Colorado. It is this section upon which Shepard's relies. I employ a three-prong test to determine whether United transacted any business within Colorado:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425, 426 (1975); *see Panos Inv. Co. v. District Court,* 662 P.2d 180, 181 (Colo.1983); *Waterval,* 620 P.2d at 9; *Marquest Medical Prod., Inc. v. Daniel McKee & Co.,* 791 P.2d 14, 16 (Colo.App. 1990). To establish that United transacted business in Colorado, Shepard's alleges three Colorado contacts.

The first centers on a software licensing agreement between United and Legalsoft. The significance of the agreement, according to Shepard's, is four part: (1) the product involved in that agreement, LMS, is made in Colorado; (2) by the terms of the agreement, United would pay to Legalsoft, a Colorado corporation, money for LMS sales; (3) because Legalsoft is located in Colorado and United's president visited Colorado, it is reasonable to infer that the agreement was negotiated in part when at least one party to it was in Colorado; and (4) the agreement contains a choice-of-law clause identifying Colorado law as governing its interpretation.

The second contact alleged is an agreement between United and STI, a Nebraska Corporation. Under that agreement there

was a possibility that money paid by United to STI would ultimately be paid by STI to Legalsoft in Colorado.

The third and final contact identified concerns a letter written by counsel for United to Legalsoft demanding that, pursuant to the United–Legalsoft contract, Legalsoft defend United in this litigation.

As discussed below, these contacts, viewed singly or collectively, do not show that United purposefully availed itself of the privilege of acting or of causing important consequences in Colorado. Nor does Shepard's cause of action against United arise from the consequences in Colorado of the United's activities. Finally, neither the activities of United nor the consequences of those activities have a substantial enough connection with Colorado to make the exercise of jurisdiction over the defendant reasonable.

As to the United–Legalsoft licensing agreement, it is undisputed that (1) United is an Oklahoma corporation, with its only place of business in Oklahoma City, (2) United has no offices, agents or representatives in Colorado, (3) although the contract concerned a product produced in Colorado, no product was ever sent from Colorado to United and (4) United has never advertised, sold any goods or licensed any computer software in Colorado. More specifically, the evidence is uncontroverted that United never sold any copies of LMS at all, or made any payments to Legalsoft.

Shepard's contends that the agreement was negotiated at least in part by phone with the United representative in Colorado. The evidence, however, is far too speculative to support this argument. First, the initial meeting between United and Legalsoft took place in Lincoln, Nebraska, not Colorado.

Second, the deposition of United's president and testimony of a Legalsoft representative establish that the only term of the contract that may have been negotiated at all was the price. Shepard's relies on a similar contract entered into by Legalsoft in which the price was different than that in the United–Legalsoft contract. Even assuming that this shows that price was ne-gotiated, the evidence is undisputed that the agreement was a form contract needing little negotiation.

Third, Shepard's provides evidence that Legalsoft contacted United perhaps three times by phone. It provides no evidence, however, that the price was negotiated by phone, or otherwise, with any party situated in Colorado.

Fourth, United did not solicit the contract from Legalsoft and never placed any calls to Legalsoft in Colorado regarding the contract. Rather, the testimony was that the contract was executed in Oklahoma and phone calls to negotiate price, if any, were initiated by Legalsoft and that they may well have been made from locales outside Colorado. Shepard's does provide some testimony that the president of United visited his daughter in Colorado and met with a Legalsoft representative for lunch. The testimony does not establish, however, that the two negotiated the contract, or that the meetings could have been more than incidentally related to the contract.

The contract contains a choice-of-law clause selecting Colorado law as governing contractual disputes. It may be, as Shepard's argues, that United should have expected that a suit on the contract would be brought in Colorado because of this clause. Here, however, United is faced with no contract dispute by the Colorado party, Legalsoft. Although the licensing agreement concerns sale of the allegedly infringing software as does this action, there is no basis to infer that United's agreement to be bound by Colorado law for purposes of the license agreement also constitutes consent to Colorado as the forum for a claim of copyright infringement on the software. Indeed, Shepard's is not even a party to the licensing agreement it claims gives rises to personal jurisdiction over United. The contract between United and Legalsoft is but a remote link to the present litigation. *See Hall v. National Basketball Ass'n*, 651 F.Supp. 335, 337–39 (D.Kan.1987).

As in *Trans–Continent Refrigerator Co. v. A Little Bit of Sweden, Inc.*, 658 P.2d 271, 273 (Colo.App.1982), there is no evidence that United came to Colorado to ne-

gotiate or execute the contract, or that the contract was part of or intended to give rise to extensive activity in Colorado. *See Equifax Serv., Inc. v. Hitz,* 905 F.2d 1355, 1358 (10th Cir.1990) ("a contract with an out-of-state party cannot alone justify personal jurisdiction in the foreign state...."). Consequently, even viewing the affidavits and testimony presented on this issue most favorably for Shepard's, I conclude that the licensing agreement between United and Legalsoft does not constitute "transaction of business" in Colorado under Colorado Revised Statute section 13–1–124(1)(a).

I also conclude that the remaining contacts relied upon by Shepard's, United's contract with STI and United's demand letter to Legalsoft, viewed independently or in conjunction with the licensing agreement between United and Legalsoft, do not meet the requirements of Colo.Rev.Stat. section 13–1–124(1)(a). First, the contract with STI, a Nebraska corporation, does not involve any Colorado entity. There is no hint that it was negotiated in Colorado, executed in Colorado or performed in Colorado. Although there was some evidence that money paid pursuant to that contract by United to STI may wend its way to Legalsoft in Colorado, that possibility is again far too remote to constitute transaction of business in Colorado by United. Second, United's letter to Legalsoft demanding that Legalsoft defend United in this action simply does not constitute transaction of business by United in Colorado. The letter was sent after the complaint was filed.

The contacts, evaluated singly or collectively, fail to qualify as "the transaction of any business within" Colorado. Colo.Rev. Stat. § 13–1–124(1)(a). Consequently, Shepard's has failed to establish a prima facia case of personal jurisdiction over United.

2. Requirements of Due Process

Because I conclude that Colorado's long-arm statute does not reach United, I need not address the fifth amendment due process issue.

B. *Venue*

United also contends that venue is improper. Because I have no personal jurisdiction over United, the venue challenge is moot.

II. STI's MOTION TO STAY OR TO DISMISS OR FOR A MORE DEFINITE STATEMENT AND LEGALSOFT'S MOTION TO DISMISS

STI moves for a stay or dismissal based on an on-going Colorado state action. Contending that the case before me is one founded primarily on contract and not the federal Copyright Act, STI claims that there is no federal subject matter jurisdiction and this action should be dismissed or stayed pending the outcome of the contract dispute now being litigated in a Colorado state court. In the alternative, STI moves for more definite statement in the complaint. Legalsoft joins STI in arguing that this action should be dismissed because the dispute arises from a contract, not from the federal Copyright Act.

A. *Jurisdiction under Federal Copyright Laws*

■ Legalsoft and STI argue at length that there are serious contract-based disputes regarding the ownership of the copyright to the software in issue here. From this premise, Legalsoft and STI rely on a line of cases in which federal courts have concluded that there is no federal subject matter jurisdiction. *See, e.g., Video Trip Corp. v. Lightning Video, Inc.,* 866 F.2d 50, 51–52 (2d Cir.1989); *Royal v. Leading Edge Prod., Inc.,* 833 F.2d 1, 2–3 (1st Cir. 1987); *Dolch v. United Cal. Bank,* 702 F.2d 178, 180–81 (9th Cir.1983); *Topolos v. Caldewey,* 698 F.2d 991 (9th Cir.1983); *RX Data Corp. v. Department of Social Serv.,* 684 F.2d 192, 196 (2d Cir.1982); *Franklin v. Cannon Films, Inc.,* 654 F.Supp. 133, 134–35 (C.D.Cal.1987); *Peay v. Morton,* 571 F.Supp. 108 (M.D.Tenn.1983); *Stepdesign, Inc. v. Research Media, Inc.,* 442 F.Supp. 32, 33–34 (S.D.N.Y.1977); *Elan Assoc. v. Quackenbush Music, Ltd.,* 339 F.Supp. 461, 462 (S.D.N.Y.1972); *Muse v. Mellin,* 212 F.Supp. 315, 318

(S.D.N.Y.1962), *aff'd*, 339 F.2d 888 (2d Cir. 1964); *Gorham v. Edwards*, 164 F.Supp. 781, 784 (S.D.N.Y.1958).

Those cases are not so broad as Legalsoft and STI claim. The Ninth Circuit in *Topolos*, for example, said no more than "[o]nly when [copyright] ownership is the *sole* question for consideration are federal courts without jurisdiction." *Topolos*, 698 F.2d at 994 (emphasis added); *see Dolch*, 702 F.2d at 180–81 ("[t]he question posed is not one that requires an interpretation of the Copyright Act or a weighing of its policies.").

Although the issue of ownership in this case may involve contract interpretation, Shepard's clearly claims copyright infringement. Unlike the cases cited by Legalsoft and STI, the claims here require construction of the Copyright Act and probably will require comparison of works. *See Cresci v. Music Publishers Holding Corp.*, 210 F.Supp. 253, 257 (S.D.N.Y.1962).

Legalsoft and STI cite authority in which copyright infringement was alleged but the courts, characterizing the infringement claims as merely "incidental" to the contract issues, found no federal subject matter jurisdiction. *See, e.g., RX Data Corp.*, 684 F.2d at 196; *Peay*, 571 F.Supp. at 112–13. Even under this analysis, however, there is federal subject matter jurisdiction here. Although there may indeed be substantial contractual issues relevant to proving copyright ownership, Shepard's complaint is clearly one for infringement and seeks remedies available exclusively through the federal copyright laws. *See Effects Assoc., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir.1987), *cert. denied*, —— U.S. ——, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991). Because proof of ownership is essential in a copyright infringement action, *see Topolos*, 698 F.2d at 994, the contractual issues could prove to be pivotal in the resolution of this dispute. Nevertheless, here the ownership issue is but one essential element of Shepard's claim of copyright infringement. *See Vestron, Inc. v. Home Box Office, Inc.*, 839 F.2d 1380, 1381–82 (9th Cir.1988). Thus, the claim of infringement is not merely "incidental" to the contract issues.

■ At oral argument, Legalsoft and STI briefly touched on the concept of federal abstention under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), asking that I exercise my discretion and abstain from hearing this action pending resolution of a parallel state court proceeding. On the record before me, I decline to do so. The *Colorado River* abstention doctrine is to be applied only in exceptional circumstances. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 936–37, 74 L.Ed.2d 765 (1983). But for fleeting or inferential reference to the doctrine, the parties have not addressed the issue and there are no apparent exceptional circumstances warranting abstention. Furthermore, abstention under *Colorado River* is clearly inappropriate here, where the claims are within the exclusive jurisdiction of the federal courts. *See Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir.1989) (and cases cited therein).

Consequently, I apply the well-established rule set forth in *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965):

> an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, *e.g.*, a suit for infringement ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*See Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 970 (4th Cir.1990). I have subject matter jurisdiction over this action.

### B. *Specificity of Complaint*

■ STI also seeks a more definite statement of the Shepard's copyrights allegedly infringed. After carefully reading the complaint, I agree that the complaint does not adequately specify the copyrights allegedly infringed. I further agree with STI that Shepard's must identify the allegedly infringing works. *See W. Nimmer & D.*

Nimmer, Nimmer on Copyright § 12.09[A] (1990). Consequently, I grant STI's motion for a more definite statement and grant Shepard's twenty days to file an amended complaint.

Accordingly, it is ORDERED THAT

(1) Defendant United Systems, Inc.'s motion to dismiss for lack of in personam jurisdiction is GRANTED;

(a) defendant United Systems, Inc. is DISMISSED WITHOUT PREJUDICE from this action;

(b) the caption in this action shall be modified to reflect the dismissal of defendant United Systems, Inc.;

(2) defendant Software Technology, Inc.'s motion to stay or dismiss is DENIED;

(3) defendant Software Technology, Inc.'s motion for more definite statement is GRANTED;

(a) Plaintiff Shepard's McGraw–Hill, Inc. is granted twenty days leave to file an amended complaint;

(b) the amended complaint must be consistent with this memorandum opinion and order;

(4) defendants Legalsoft Corporation, Max Wharton and Peter Westphal's motion to stay or dismiss is DENIED.