Robert E. HILL, individually, and as parent and next friend of Tasha R. Hill, a minor; and Cynthia G. Hill, individually, and as parent and next friend of Tasha R. Hill, a minor, Plaintiffs,

v.

UNITED STATES of America, Defendant/Third–Party Plaintiff,

v.

Richard J. HILL, M.D., Third–Party Defendant.

Civ. A. No. 90–B–1071.

United States District Court, D. Colorado.

Feb. 22, 1993.

See also 751 F.Supp. 909.

Shelly B. Don, Watson W. Galleher, Don, Hiller & Galleher, P.C., Denver, CO, for plaintiffs.

James W. Winchester, Sr. Litigation Counsel, U.S. Attys. Office, Denver, CO, for defendant/third party plaintiff.

Kevin J. Kuhn, Craig A. Adams, Montgomery Little & McGrew, P.C., Englewood, CO, Richard A. Kent, Bruce C. Smith, Teilborg, Sanders & Parks, Phoenix, AZ, for 3rd party defendant.

MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this Federal Tort Claims Act case, Dr. Richard J. Hill (Dr. Hill) moves to dismiss the government's third-party complaint for lack of personal jurisdiction. The issue is adequately briefed and oral argument will not materially aid in its resolution. I will grant Dr. Hill's motion for the reasons set forth below.

## I.

Dr. Hill is Tasha Hill's grandfather. In August 1988 Dr. Hill commenced a physician-patient relationship with his granddaughter in Phoenix, Arizona when he administered initial immunizations and performed a "well-baby" check-up. On October 13, 1988, Dr. Hill administered to Tasha a second polio vaccine and a second immunization. At the time of this second immunization Tasha was in good health, but toward evening she became fussy and irritable. Dr. Hill instructed Tasha's mother, Cynthia Hill, to give Tasha tylenol. The next day Dr. Hill examined Tasha. He diagnosed a DPT reaction and a developing upper respiratory tract infection due to bacteria. Dr. Hill prepared a 10–day supply of an antibiotic and recommended the parents continue giving Tasha tylenol as well as Dimetapp.

On October 15, when Robert and Cynthia Hill (Hills) left Phoenix for Ft. Carson, Colorado, taking Tasha with them, Dr. Hill told the Hills to continue the medications. Upon arrival in Colorado Springs shortly after midnight on October 16, the Hills called Dr. Hill and reported that Tasha had a fever of 101 degrees, was fretful, and not eating. Dr. Hill recommended feeding Tasha jello water. On Monday October 17, Tasha Hill was admitted to the Army hospital's Intensive Care Unit at Ft. Carson and was subsequently diagnosed with H–Flu meningitis. Tasha has developed neurological sequelae, including extensive brain injury which will result in severe retardation and cerebral palsy.

The Hills allege that their daughter Tasha received negligent medical treatment while admitted to Evans Army Community Hospital and Fitzsimons Army Medical Center in Colorado. The Hills sued the United States for medical malpractice that the government doctors committed when she arrived in Colorado. Original jurisdiction over the Hills' suit exists under 28 U.S.C. § 1346. The United States seeks to join Dr. Hill in Colorado based on allegations that Dr. Hill's negligent treatment of Tasha contributed proximately to her injury. This court has original jurisdiction over the government's claim under 28 U.S.C. § 1345, as the government seeks damages under the Federal Medical Care Recovery Act, 42 U.S.C. § 2651, et seq.

## II.

Dr. Hill filed a motion to dismiss for lack of personal jurisdiction. He argues that the exercise of jurisdiction would violate Colorado's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution because he does not have "minimum contacts" with Colorado and he did not "purposely avail" himself of Colorado laws.

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Before trial, a plaintiff need only make a prima facie showing of jurisdiction. All disputes of fact are to be construed in a light most favorable to the plaintiff. *Id.*

The government must satisfy a two-prong test to make its prima facie showing that I have personal jurisdiction over Dr. Hill. *Shepard's McGraw–Hill, Inc. v. Legalsoft Corp.*, 769 F.Supp. 1161, 1162 (D.Colo. 1991). This is true even in federal question actions where, as here, the underlying federal statute does not provide for nationwide service of process and process is served under the state long-arm statute. *Id.* The exercise of personal jurisdiction must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements. *Id.* at 1162–63. Colorado's long arm statute is coextensive with constitutional limitations imposed by the Due Process Clause. *Mr. Steak, Inc. v. District*

*Court,* 194 Colo. 519, 574 P.2d 95, 96 (1978). Therefore, if jurisdiction is consistent with the Due Process Clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant.

■ Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

## A. Specific Jurisdiction

■ To establish specific jurisdiction a defendant must do some act that represents an effort by the defendant to "purposely avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). A defendant does so when he purposely directs his foreign acts so that they have an effect in the forum state. *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir.1990). The purposeful availment requirement serves two functions. First, it identifies acts that a defendant would reasonably expect to subject him to jurisdiction in a particular forum. Second, it ensures that only the defendant's acts directed at the forum establish jurisdiction. *Burger King v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

In the context of doctor-patient litigation, the Tenth Circuit has indicated that special rules will apply to ensure that personal jurisdiction is asserted over a doctor only when he has purposely availed himself of the privileges of conducting activities within the patient's state. *Kennedy,* 919 F.2d at 129. The policy behind the special rules is a state's compelling interest in ensuring access to out-of-state, specialized medical care. *Id.* Courts have applied special jurisdictional rules when doctors who have essentially local practices become involved in another state, not as a result of their intention to do so but,

rather, as a result of the action of their out-of-states patients. *See e.g., Wright v. Yackley,* 459 F.2d 287, 288–89 (9th Cir.1972) (no jurisdiction in Idaho over South Dakota doctor who treated his patient in South Dakota and merely phoned a prescription refill into Idaho); *McAndrew v. Burnett,* 374 F.Supp. 460 (M.D.Penn.1974) (no jurisdiction in Pennsylvania over New York surgeon where negligent surgery occurred in New York and decedent subsequently moved to Pennsylvania and died there).

Courts have found jurisdiction over nonresident doctors where they purposely directed their actions at plaintiffs' states. *See e.g., Cubbage v. Merchant,* 744 F.2d 665 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985) (jurisdiction proper in California over Arizona doctor who practiced near California border and advertised in California); *McGee v. Riekhof,* 442 F.Supp. 1276 (D.Mont.1978) (jurisdiction asserted over a Utah doctor on the basis of his phone call from Utah to Montana in which he rendered a negligent diagnosis to his Montana patient).

■ The central issue in this case is whether Dr. Hill purposely availed himself of the privilege of conducting activities in Colorado by directing his activities there. The Government argues that Dr. Hill directed activities toward Colorado by: (1) receiving a phone call from the Hill's at 12:52 a.m. on Sunday, October 16, 1988 from Ft. Carson when Tasha's condition and Dr. Hill's recommendations for care were discussed, and (2) Dr. Hill's calling the nursing staff at the hospital in Ft. Carson where Tasha was receiving care and inquiring about the specific care being provided.

The government argues that these facts are indistinguishable from *Kennedy,* 919 F.2d at 126, a medical malpractice case filed in Oklahoma by an Oklahoma resident where the Tenth Circuit allowed jurisdiction over a Texas physician. I disagree and conclude that this case is distinguishable on its facts.

Like Colorado, Oklahoma's long-arm statute is co-extensive with the Due Process Clause. Kennedy's Oklahoma physician consulted Dr. Freeman, a Texas physician. Dr.

Freeman misrepresented the size of a lesion taken from Kennedy's thigh, causing a negligent diagnosis for Kennedy in Oklahoma, knowing the significance of the consult and that it would be the basis of Kennedy's further treatment in Oklahoma. *Id.* at 129.

Here, during the phone call on October 16, 1988 initiated by the Hills, Dr. Hill made no new diagnosis. His recommendation to feed Tasha jello water was consistent with his diagnosis made in Arizona of a DPT reaction. (Dr. Hill deposition at 50, lines 5–8.) The deposition of Maureen Kelly, R.N., (Kelly) a member of the nursing staff at the Ft. Carson hospital, indicates that Dr. Hill called on several occasions and inquired about the specific care and procedures for Tasha's treatment. (Kelly deposition at 10, lines 20–21.) Kelly did not indicate directly or inferentially that Dr. Hill made any diagnosis, ordered any new procedures or in any way changed the child's course of treatment. The government presents no evidence, direct or circumstantial, that Dr. Hill's calls to the Ft. Carson hospital had any bearing whatsoever on Tasha's care at Ft. Carson or the conduct of those charged with her care and treatment. In addition, Kelly admitted that she frequently receives calls from grandparents inquiring about the condition of their grandchildren. (Kelly deposition at 11, lines 13–23.)

Even considered in a light most favorable to the government, I conclude that Dr. Hill's actions are insufficient to qualify as purposeful availment of the privilege of conducting activities within the State of Colorado. Therefore, the exercise of specific jurisdiction over Dr. Hill contravenes the due process clause.

*B. General Jurisdiction*

Under general jurisdiction, a nonresident defendant may be subject to a state's jurisdiction even though the alleged injury is unrelated to the defendant's contacts with the forum state. If a defendant's contacts with a state are strong enough, the state may assert jurisdiction over a defendant on any matter, whether or not it arises out of the defendant's contacts with the state. *See Perkins v. Benquet Consol. Mining Co.,*

342 U.S. 437, 446, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952).

For general jurisdiction, a defendant's contacts with a state must be greater than those required for specific jurisdiction. *Doe v. National Medical Services,* 974 F.2d 143, 146 (10th Cir.1992). General jurisdiction is appropriate only when a defendant has "continuous and systematic" general business contacts with the forum state, *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872, so that the defendant could reasonably anticipate being haled into court in that forum. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

Here, although Dr. Hill admits that he has visited the Hills four times in Colorado since October 1990, this minimal contact with the State of Colorado is clearly insufficient to support general jurisdiction. I conclude that Dr. Hill's contacts with the State of Colorado are insufficient to support the exercise of personal jurisdiction over Dr. Hill in conformity with the Due Process Clause.

Accordingly, it is ORDERED that Dr. Hill's motion to dismiss is GRANTED.